**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| LONG-LOK, LLC, | : | |
| *Plaintiff*, | : | Case No. 1:25-cv-346 |
| vs. | : | Judge Jeffery P. Hopkins |
| SAFETY SOCKET, LLC, | : | |
| *Defendant*. | : | |

## OPINION AND ORDER

This case arises from a trademark dispute between parties that had done business together for an extended period, Plaintiff Long-Lok, LLC ("Plaintiff" or "Long-Lok") and Defendant Safety Socket, LLC ("Defendant" or "Safety Socket"). Well into the parties' history together, Safety Socket allegedly threatened Long-Lok with allegations of trademark infringement. In turn, Long-Lok brought this action for trademark cancellation as well as declaratory and injunctive relief contending that the trademark Safety Socket seeks to enforce for fasteners it manufactures is merely functional or has been abandoned, terms of art defined under the Lanham Act, and addressed later in the opinion, but for now meaning that the mark is unenforceable. *See* 15 U.S.C. § 1064(3). Safety Socket is before the Court seeking partial dismissal of two of Long-Lok's claims, namely Counts One and Eight of the Amended Complaint. Doc. 18.

For the reasons stated below, Safety Socket's now fully-briefed Partial Motion to Dismiss (Doc. 18) is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiff, Long-Lok, operates in the aerospace industry. Am. Compl., Doc. 13, ¶¶ 2, 13. It is an engineered-fastener company that modifies existing fasteners to make them self-locking and self-sealing for its aerospace customers. *Id.* And, until it got out of the fabricating business, Defendant Safety Socket LLC had for many years been a manufacturer of high-strength fasteners along with socket-head cap screws, for commercial and military applications. *Id.* ¶ 12. This case concerns modifications made by Plaintiff, Long-Lok, to Defendant, Safety Socket's socket-head fasteners.

For more than fifty years, Long-Lok engineered self-locking fasteners used in aerospace applications. *Id.* ¶ 2. Rather than manufacture fasteners from raw materials, Long-Lok simply took standard fasteners supplied by a customer or purchased fasteners requested by a customer from a manufacturer or distributor, like Defendant Safety Socket, and modified those products for them for use in the aerospace industry. *Id.* ¶¶ 3, 18.

Long-Lok alleges that it has had a business relationship with Safety Socket for many years. Since at least 2005, Safety Socket has submitted purchase orders requesting that Long-Lok add self-locking mechanisms to Safety Socket fasteners and then return the modified fasteners to Safety Socket for resale. *Id.* ¶ 27. And, since at least 2010, Long-Lok has purchased from Safety Socket fasteners and modified them for customers other than Safety Socket. *Id.* ¶ 28. In performing this work, Long-Lok adds one of three self-locking mechanisms: a Long-Lok strip, Poly-Lok patch, or Tek-Lok pellet. *Id.* ¶¶ 13–16, 18. Long-Lok alleges that these mechanisms reduce vibration and are visible on the exterior of the fastener. *Id.* ¶¶ 13, 17. Long-Lok further alleges that it performs all modifications according

to customer specifications and does not maintain an inventory of Safety Socket fasteners equipped with a self-locking mechanism. *Id.* ¶ 19.

Long-Lok maintains that, whenever a customer provides the fastener, it provides documentation identifying the modifications it made. *Id.* ¶ 22. Wherever Long-Lok procures the fastener, it sends the completed part with documents reflecting the fastener's chain of custody, including the original manufacturer's paperwork and Long-Lok's certification concerning its modifications. *Id.* According to Long-Lok, it does not alter paperwork prepared by Safety Socket; instead, it adds its own paperwork and transmits the complete certification packet to the customer. *Id.*

Safety Socket claims ownership of U.S. Trademark Registration No. 4,903,629, a design mark depicting two bands of diagonal knurls around a fastener head (the "Banded Knurl Mark"). *Id.* ¶ 24. Safety Socket also claims ownership of a SAFETY SOCKET word mark and a stylized SAFETY SOCKET mark. *Id.* ¶ 26. Most of the Safety Socket fasteners that Long-Lok modifies allegedly bear the Banded Knurl Mark. *Id.* ¶ 30. Long-Lok does not remove the mark in the course of adding its self-locking mechanisms. *Id.* Long-Lok alleges, however, that the modification is apparent because the self-locking mechanism is visible and, for certain aerospace parts, Long-Lok adds a six-dot head marking to signify that the part includes a self-locking mechanism. *Id.* ¶¶ 21, 30. Long-Lok also alleges that the paperwork it supplies customers identifies Safety Socket as the original manufacturer and identifies Long-Lok as the entity responsible for the strip, patch, or pellet modification. *Id.* ¶ 31.

According to Long-Lok, Safety Socket transitioned in 2023 from a manufacturing-and-service company to a company providing services. Also according to Long-Lok, Safety Socket now provides services for customers that include consulting regarding product failures,

standards, materials transitions, and litigation. *Id*. Long-Lok alleges that Safety Socket therefore ceased manufacturing products, including the fasteners at issue, in 2023. *Id*. ¶ 42. Long-Lok further alleges that Safety Socket has no intention to resume use of the Banded Knurl Mark because the mark was used exclusively on Safety Socket's manufactured fasteners and Safety Socket had announced its transition to a purely service company. *Id*. ¶ 43.

In early March 2024, representatives of the parties attended a National Aerospace Standards Committee meeting concerning revisions to a fastener-procurement specification. *Id*. ¶ 33. After a Long-Lok representative voiced disagreement with Safety Socket founder Jim Erb's proposed language regarding trademark infringement and liability, the parties subsequently discussed by telephone Mr. Erb's position on trademark infringement. *Id*. ¶ 34. Those discussions apparently did not go well because on March 19, 2025, Safety Socket sent Long-Lok a cease-and-desist letter. *Id*. ¶ 35. The letter asserted that Long-Lok's modification, distribution, and sale of Safety Socket fasteners infringed Safety Socket's trademark rights and violated other state and federal laws. *Id*. Safety Socket also commented in the letter that it had successfully litigated similar disputes involving entities that modified its parts and placed them into commerce. *Id*.

Undaunted by Safety Socket's cease-and-desist letter, Long-Lok filed the current eight-count Amended Complaint presently before the Court. Counts One and Eight are the only ones at issue here. In Count One, Long-Lok seeks cancellation of the Banded Knurl Mark under 15 U.S.C. § 1064. *Id*. ¶¶ 36–44. Long-Lok alleges that the mark is functional because the two bands of diagonal knurls provide a better grip when using the fastener to affix components, are essential to the fastener's use or purpose, and affect its quality. *Id*. ¶¶ 25, 39. Long-Lok further alleges that Safety Socket's exclusive use of the feature hinders competitors'

ability to create an equivalent gripping mechanism. *Id.* ¶¶ 25, 41. As an alternative basis for cancellation, Long-Lok alleges that Safety Socket abandoned the Banded Knurl Mark when it ceased manufacturing products in 2023 and did not intend to resume use of the mark. *Id.* ¶¶ 42–44.

In Count Eight, Long-Lok seeks a declaratory judgment from the Court determining that Safety Socket abandoned its trademark rights in the Banded Knurl Mark and that abandonment would bar a future infringement claim by Safety Socket. *Id.* ¶¶ 93–98. Count Eight rests on the same alleged discontinuation of use and lack of intent to resume use alleged in Count One. *Id.* ¶¶ 95–98. To counter, Safety Socket has moved under Federal Rule of Civil Procedure 12(b)(6) for dismissal of Counts One and Eight. Doc. 18. Long-Lok opposes the Motion. Doc. 20. Safety Socket has filed a reply. Doc. 22. The Motion is now ripe for adjudication.

## II. STANDARD OF REVIEW

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, under the plausibility standard set forth in *Twombly* and *Iqbal*, courts play an

important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). In doing so, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000).

## III. LAW AND ANALYSIS

As noted, Safety Socket moves to dismiss Counts One and Eight of the Amended Complaint on the basis that Long-Lok has not plausibly alleged that the Banded Knurl Mark is either functional or abandoned. Doc. 18. As part of its Motion, Safety Socket asks the Court to take judicial notice of materials beyond the Amended Complaint that, in Safety Socket's view, undermine Long-Lok's claims. Docs. 18-1, 18-2, 18-3, 18-4, 18-5, 18-6, 18-7, 18-8, 18-9, 18-10. Long-Lok objects to this Court's consideration of any materials Safety Socket has proffered outside-the-complaint, and asserts that it has plausibly alleged claims under Counts One and Eight of the Amended Complaint. Doc. 20.

### A. Scope of the Record

The Court first considers the scope of the record. As stated, Safety Socket relies on materials outside the Amended Complaint, including filings from the U.S. Patent and Trademark Office ("USPTO") and the Trademark Trial and Appeals Board ("TTAB"), prior

litigation involving Safety Socket and a third party, *see Safety Socket v. Relli Technology, Inc.*, No. 18-cv-6670 (N.D. Ill.), and declarations from James Erb and Steven Shebar. Safety Socket asks the Court to take judicial notice of the USPTO and TTAB filings, along with the proceedings in *Relli*, and to consider those filings, proceedings, and the Erb and Shebar declarations in deciding whether dismissal of Counts One and Eight is appropriate.

Ordinarily, a court is confined to the pleadings in considering a Rule 12(b)(6) motion to dismiss, or else it must convert the motion into one for summary judgment under Rule 56. *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023). "[W]hen a document is referred to in the pleadings and is integral to the claims," then the court can consider that document without converting the motion into one for summary judgment. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). The same is true for documents of which the court can take judicial notice, like "'matters of public record, orders, items appearing in the record of the case, [or] exhibits attached to the complaint.'" *Elec. Merch.*, 508 F.3d at 883 (quoting *Golf Vill. North LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021)). If, however, a party offers documents that fall outside these limited categories, the court must "expressly exclude outside-the-complaint materials" or "convert the motion to one for summary judgment." *Cotterman v. City of Cincinnati*, No. 21-3659, 2023 WL 7132017, at *4 (6th Cir. Oct. 30, 2023) (citing *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006)); Fed. R. Civ. P. 12(d). If the court deems conversion of the motion appropriate, the court must first give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

**i. The USPTO and TTAB Filings**

Turn first to the USPTO and the TTAB filings. Safety Socket wants this Court to consider these documents to show that the issue of functionality was raised in the USPTO proceedings, that Safety Socket submitted evidence rebutting functionality, and that the Banded Knurl Mark was registered. Doc. 22, PageID 444–45. Long-Lok does not contest documentation that shows the Banded Knurl Mark was registered and acknowledges that trademark registration for that mark may be considered without converting Safety Socket's motion into one for summary judgment since Long-Lok referred to it in the first instance in the Amended Complaint. *See* Doc. 20, PageID 422 n.1 (citing Def. Ex. A, Doc. 18-2, PageID 330–35). Long-Lok, however, asserts that judicial notice of the *other* documents filed in the case, which are being urged for consideration by the Court in the context of the motion to dismiss, must be limited to the mere existence of the records themselves, and should not extend to facts that are subject to reasonable dispute, such as those related to functionality. *Id.* at PageID 426–28.

Generally, courts may take judicial notice of USPTO and TTAB filings because those filings are government records that are publicly available. *Scotts Co., LLC v. SBM Life Sci. Corp.*, No. 2:23-cv-1541, 2025 WL 2653809, at *6 (S.D. Ohio Sept. 16, 2025). Here, however, it is improper to take judicial notice of the USPTO and TTAB filings in the manner that Safety Socket intends. Safety Socket reasons that because functionality was raised in the USPTO proceedings, Safety Socket submitted evidence rebutting functionality, and the Banded Knurl Mark was ultimately registered, then Long-Lok has failed to plausibly allege a trademark cancellation claim on the basis of functionality.

To accept this argument, however, we would need to disregard the principle that courts should take judicial notice "only for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005). Otherwise, Safety Socket's request would require this Court to take judicial notice of facts that are subject to reasonable dispute relating to functionality. *Pinterest Inc. v. Pintrips, Inc.*, 15 F. Supp. 3d 992, 997 (N.D. Cal. 2014) ("As such, while the USPTO records may be subject to judicial notice, they are noticeable only for the limited purpose of demonstrating that the filings and actions described therein occurred on certain dates."). Though the registered Banded Knurl Mark is entitled to a presumption of validity, and thus, presumptively nonfunctional, such a presumption does not automatically preclude a party like Long-Lok from asserting a plausible cancellation claim based on functionality. *Goscicki v. Custom Brass & Copper Specialties, Inc.*, 229 F. Supp. 2d 743, 749 (E.D. Mich. 2002). Thus, the Court cannot take judicial notice of the USPTO and TTAB filings in the manner that Safety Socket requests, save for the trademark registration for the Banded Knurl Mark that was referred to in the Amended Complaint. *Passa*, 123 F. App'x at 697; *see* Fed. R. Evid. 201.

**ii. The *Relli* Proceedings**

Next the Court considers the judicial proceedings in *Safety Socket v. Relli Technology, Inc.*, No. 18-cv-6670 (N.D. Ill.). Safety Socket wants this Court to consider a jury verdict in that case "finding the Banded Knurl to be a validly registered trademark, resulting in a legal presumption of non-functionality" and "a judicial ruling denying an adverse party's attempt to reverse that jury verdict." Doc. 22, PageID 445. Long-Lok objects to Safety Socket's attempt for the same reason it objected to the USPTO and TTAB filings—that is, it is not

appropriate to take judicial notice of those proceedings in an effort to show that functionality of the Banded Knurl Mark has been litigated. Doc. 20, PageID 425.

Like the USPTO and TTAB filings, a court may as a general matter take notice of judicial proceedings on a motion to dismiss without converting the motion to one for summary judgment. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). But the court may do so "not for the truth of the facts recited [in a judicial proceeding], but for the existence of [the proceeding], which is not subject to reasonable dispute over its authenticity." *Id.* Here, however, Safety Socket asks this Court to take judicial notice of the proceedings in *Relli* for the same reason it requests judicial notice of the USTPO and TTAB filings: to show that functionality has been addressed in relation to the Banded Knurl Mark. But as with the USPTO and TTAB filings, this Court cannot take judicial notice of the *Relli* proceedings in the manner that Safety Socket intends, nor properly consider those proceedings as the information related thereto constitutes outside-the-complaint materials that is improper to account for at this early stage in the proceedings, especially considering that functionality is a question of fact yet to be decided. *Fuji Kogyo Co., Ltd. v. Pac. Bay Int'l, Inc.*, 461 F.3d 675, 681 (6th Cir. 2006).

**iii. The Declarations**

That leaves the final category of documents that constitute outside-the-complaint materials: two declarations, one from James Erb (the "Erb Declaration"), Safety Socket's President and Chief Executive Officer, and the other from Steve Shebar (the "Shebar Declaration"), Safety Socket's lead trial counsel. Erb Decl., Doc. 18-1; Shebar Decl., Doc. 18-3. These declarations are not subject to judicial notice; thus, the inquiry related to them

turns on whether the information set forth in either declaration "is referred to in the pleadings and is integral to the claims." *Commercial Money Ctr., Inc.*, 508 F.3d at 335–36.

Though the information in the Erb and Shebar declarations appears to be integral to the claims, the information exceeds that which is referred to in the pleadings. For example, aside from discussing trademark registration of the Banded Knurl Mark, the Shebar declaration describes Safety Socket's dealings with the USPTO and TTAB and the *Relli* proceedings, matters that are clearly outside that which are referred to in the Amended Complaint. Likewise, the Erb declaration contains factual information that counters Long-Lok's allegations in the Amended Complaint related to functionality, and it would be improper to consider that information at this stage. *Feighner Co., Inc. v. Thru-Flow, Inc.*, No. 1:22-cv-709, 2022 WL 18540546, at *2 (W.D. Mich. Oct. 28, 2022) (finding an affidavit attached to a motion to dismiss to be outside the pleadings because the averments in the affidavit contradicted allegations in the complaint).

Safety Socket has not asked this Court to convert its motion to dismiss into one for summary judgment, and Safety Socket has moved to dismiss only two of Long-Lok's claims—Counts One and Eight of the Amended Complaint. Under these circumstances, converting Safety Socket's motion into one for summary judgment would be neither prudent nor in the interests of justice; accordingly, the Court must exclude the Erb and Shebar declarations. *Randick v. Sawhill*, 530 F. Supp. 3d 720, 723 (E.D. Mich. 2021) (declining to consider a declaration attached to a motion to dismiss because the declaration presented facts not alleged in the complaint); *Luis v. Zang*, 833 F.3d 619, 632 (6th Cir. 2016) (finding it premature to rely on an affidavit at the motion to dismiss stage where the affidavit was "plainly not referred to in the complaint" (citation omitted)).

### B. Cancellation Based on Functionality and Abandonment (Count One)

As to Count One, Long-Lok seeks cancellation of Safety Socket's Banded Knurl Mark on two theories: functionality and abandonment. Am. Compl., Doc. 13, ¶¶ 36–44. Safety Socket contends, however, that Long-Lok's functionality allegations are conclusory and implausible because socket-head fasteners are designed to be operated with a socket wrench, not by gripping the fastener head, and because Long-Lok does not allege facts showing that the design affects cost or quality or satisfies other recognized functionality considerations. Safety Socket further contends that the registration creates a presumption of non-functionality that Long-Lok has not plausibly rebutted.

Similarly, with regard to abandonment, Safety Socket argues that the alleged shift away from manufacturing does not establish discontinued trademark use or an intent not to resume use, particularly in light of Long-Lok's allegation that it continues to acquire and modify Safety Socket fasteners bearing the mark, and that the asserted period of nonuse is insufficient to invoke the statutory abandonment presumption.

To state a claim under 15 U.S.C. § 1119, Long-Lok must plausibly allege a valid ground for cancellation of the Banded Knurl Mark.[1] Section 1064 of the Lanham Act limits the grounds on which a party may seek cancellation of a trademark registration that has been registered for five years. *NetJets Inc. v. IntelliJet Group, LLC*, 678 F. App'x 343, 348 (6th Cir.

---

[1] In addition to establishing a valid ground for cancellation, Long-Lok must show that it "'has standing to petition for cancellation because it is likely to be damaged[.]'" *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 593 (6th Cir. 2015) (quoting *Coach House Rest. v. Coach & Six Rests.*, 934 F.2d 1551, 1557 (11th Cir. 1991)). There is no dispute that Long-Lok has done so. Safety Socket has allegedly threatened Long-Lok with claims of trademark infringement; thus, Long-Lok has standing. Am. Compl., Doc. 13, ¶ 37. *See Scotts Co. LLC v. SBM Life Sci. Corp.*, No. 2:23-cv-1541, 2025 WL 2653809, at *3 (S.D. Ohio Sept. 16, 2025) ("SBM's standing to bring cancellation claims under § 1119 is not contested and is clear: Scotts is suing SBM for trademark infringement regarding, in part, the same registered trademarks that SBM now seeks to cancel.").

2017 (citing 15 U.S.C. § 1064). As is the case here, once that five-year period has elapsed, a cancellation petition may proceed only on specified grounds, such that the mark is functional or has been abandoned. 15 U.S.C. § 1064(3). "The functionality doctrine . . . forbids the use of a product's feature as a trademark where doing so will put a competitor at a significant disadvantage because the feature is 'essential to the use or purpose of the article' or 'affects [its] cost or quality.'" *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 169 (1995) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982)). Abandonment occurs when use of a mark "has been discontinued with intent not to resume such use." 15 U.S.C. § 1127.

Long-Lok's cancellation claim based on functionality survives dismissal, albeit narrowly. In the Amended Complaint Long-Lok alleges that the Double Banded Knurl feature at the top of the fastener is "essential" because "it confers the specific, utilitarian, and functional advantage of a better grip to consumers to aid in using the fasteners to affix various components to one another." Am. Compl., Doc. 13, ¶ 39. But is "better grip" enough at this stage? Safety Socket counters that it is not because "socket head fasteners such as the ones bearing [the Banded Knurl Mark], have no need whatsoever for any 'gripping ability,' since they are turned, by definition and design, by inserting a socket wrench into the socket head." Doc. 22, PageID 443–44.

Though Long-Lok's functionality allegations rest on the thinnest of reeds, the parties' competing factual assertions and counter assertions about whether the Banded Knurl design provides a meaningful utilitarian benefit in the context of socket-head fasteners cannot be resolved at the pleading stage by merely accepting Safety Socket's contrary declaration that the fasteners are not hand-tightened. Further, as a question of fact, the issue of functionality is generally not suitable for disposition on a motion to dismiss. *Deere & Co. v. FIMCO, Inc.*,

No. 5:15-CV-105-TBR, 2015 WL 6043960, at *2 (W.D. Ky. Oct. 15, 2015). And it would be premature to consider the *Morton-Norwich* factors that Safety Socket cites, which are more appropriate to consider against a developed factual record. Doc. 18, PageID 319 (citing *Fuji*, 461 F.3d at 685 (discussing the *Morton-Norwich* factors when considering the merits of a district court's bench trial determination regarding functionality of a trademark)). Thus, drawing all reasonable inferences in its favor, Long-Lok's functionality theory is not subject to dismissal.

On the other hand, Long-Lok's cancellation claim does not plausibly state a claim for abandonment as presently plead. "[F]or a party to succeed on . . . abandonment, it must prove the elements of both non-use and intent, *i.e.*, that the other party actually abandoned its mark through non-use and that it intended to do so." *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 575 (6th Cir. 2000). Long-Lok alleges that Safety Socket discontinued use of the Banded Knurl Mark "in commerce as late as 2023 when it stopped manufacturing products, including the fasteners at issue," and that Safety Socket "has no intention to resume use" because the Banded Knurl Mark "was exclusively used on its manufactured fasteners and Safety Socket announced to the public that it has transitioned from a manufacturing and service company to a purely service company." Am. Compl., Doc. 13, ¶ 42–43. Safety Socket argues that these allegations are insufficient to state a claim for abandonment because Long-Lok has not shown a three-year period of non-use, nor adequately alleged that Safety Socket is not still using the mark. Doc. 18, PageID 322–23.

Safety Socket is correct that a three-year period of nonuse constitutes *prima facie* evidence of abandonment. 15 U.S.C. § 1127; *see Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013). But this does not automatically mean that Long-Lok has failed to state a

claim. Pleading a consecutive three-year period of nonuse creates only a rebuttable presumption of abandonment. Absent evidence of a consecutive three-year period of nonuse, Long-Lok retains the burden of persuasion on both elements: nonuse and intent. *Oatly AB v. D's Naturals LLC*, No. 1:17-cv-840, 2020 WL 5310272, at *3 (S.D. Ohio Sept. 4, 2020).

Even so, Long-Lok has not plausibly alleged these elements. Though Long-Lok has alleged that Safety Socket discontinued use of the Banded Knurl Mark as late as 2023 when it stopped manufacturing products with that mark, that it used the Banded Knurl Mark exclusively on its manufactured fasteners, and that Safety Socket publicly announced it had transitioned from a manufacturing and service company to purely a service company, Am. Compl., Doc. 13, ¶¶ 42–43, Long-Lok alleges that it continues to modify fasteners bearing the Banded Knurl Mark, which lends to the inference that the Banded Knurl Mark still exists in commerce, *id.* ¶ 37. Further, the Court recognizes as a general matter that a mark owner, like Safety Socket, "does not need to use the mark in the precise manner that it was initially used or registered to prevent abandonment." *Net Jets Inc.*, 602 F. App'x at 245. Accordingly, the Court finds that Safety Socket is entitled to dismissal of Count One, only to the extent that Long-Lok's claim is predicated on abandonment.

That said, in its opposition, Long-Lok has alternatively requested leave to amend its Amended Complaint. Rule 15(a)(2) encompasses a "liberal policy of permitting amendments to ensure the determination of claims on their merits." *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (quoting *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987)). Because it is not apparent that amendment would be futile on the present record and since Safety Socket did not indicate opposition to amendment in its reply, Long-Lok may amend the allegations in the Amended Complaint to reassert its abandonment theory.

### C. Declaratory Judgment Based on Abandonment (Count Eight)

As to Count Eight, Long-Lok seeks a declaratory judgment that Safety Socket abandoned the Banded Knurl Mark and therefore cannot rely on that mark in a future infringement action against Long-Lok. Am. Compl., Doc. 13, ¶¶ 93–98. Because this Court has determined that Long-Lok has failed to state a plausible claim for cancellation on the theory of abandonment, Count Eight must also be dismissed. Yet as stated, Long-Lok may amend its abandonment claims in accordance with Rule 15(a)(2).

## IV. CONCLUSION

For the reasons stated, Safety Socket's Partial Motion to Dismiss (Doc. 18) is **GRANTED IN PART** and **DENIED IN PART**. Long-Lok is permitted leave to amend to cure the deficiencies stated herein within 14 days of the date of this Order.

**IT IS SO ORDERED.**

August 21, 2026

Jeffery P. Hopkins
United States District Judge